**CASE NO. 26-3535**

# UNITED STATES COURT OF APPEALS
# FOR THE
# SIXTH CIRCUIT

**Michael Redden**
*Plaintiff-Appellant*

v.

**Tim Baird, et al**
*Defendants-Appellees*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
Civil Action No. 1:24-cv-00342-MWM
Honorable Matthew W. McFarland, United States District Judge, presiding

**REPLY BRIEF OF APPELLANT MICHAEL REDDEN**

/s/ Joshua Adam Engel
Joshua Adam Engel (OH 0075769)
ENGEL & MARTIN, LLC
4660 Duke Drive, Ste. 101
Mason, OH 45040
(513) 445-9600
(513) 492-8989 (Fax)
engel@engelandmartin.com

## CORPORATE DISCLOSURE

Appellant is not a subsidiary or affiliate of a publicly owned corporation. There is no publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome.

## TABLE OF CONTENTS


SUMMARY OF ARGUMENT .......... 1

ARGUMENT .......... 3

A. Viewing The Evidence In The Light Most Favorable To Redden, Redden Has Sufficient Evidence To Proceed On His 1983 Claim Against Baird .......... 3

1. Baird's Probable Cause For Arrest Started To Erode And Eventually Evaporated As He Continued To Investigate And After He Received The Video Of The Incident .......... 3

2. Baird Did Not Have Probable Cause To Arrest Redden For Any Other Crimes .......... 8

3. Redden's Malicious Prosecution Claim Survives .......... 12

B. Redden Presented Sufficient Evidence To Proceed On His Failure To Supervise Claim .......... 15

D. Officer Baird Is Not Entitled To Qualified Immunity .......... 18

CONCLUSION .......... 20

CERTIFICATE OF COMPLIANCE .......... 21

CERTIFICATE OF SERVICE .......... 21

## TABLE OF AUTHORITIES

Cases

*Ahlers v. Schebil*, 188 F.3d 365 (6th Cir. 1999) ............................................................*passim*

*Anaya v. Crossroads Managed Care Sys.,* 195 F.3d 584 (10th Cir. 1999) ..............................17

*Anderson v. Creighton,* 483 U.S. 635 (1987) ..........................................................................10

*Awabdy v. City of Adelanto*, 368 F.3d 1062 (9th Cir. 2004) ..................................................13

*BeVier v. Hucal*, 806 F.2d 123 (7th Cir. 1986) ........................................................................5

*Brown v. City of Wyoming*, 6th Cir. No. 23-1285, 2024 U.S. App. LEXIS 31173 (Dec. 9, 2024) ...........................................................................................................................6

*City of Dayton v. Crane*, 2d Dist. No. 16608, 1998 Ohio App. LEXIS 153 (Jan. 23, 1998) ......................................................................................................................12

*Cooper v. California*, 386 U.S. 58 (1967) ...............................................................................16

*Courtright v. City of Battle Creek*, 839 F.3d 513 (6th Cir. 2016) ..............................................5

*Denton v. Rievley*, E.D.Tenn. No. 1:07-CV-211, 2008 U.S. Dist. LEXIS 60280 (July 21, 2008)......................................................................................................................16

*Devenpeck v. Alford*, 543 U.S. 146 (2004) ........................................................................ 8, 9

*Gardenhire v. Schubert*, 205 F.3d 303 (6th Cir. 2000).....................................................*passim*

*Harris v. City of Saginaw*, 62 F.4th 1028 (6th Cir. 2023)..........................................................5

*Israel v. City of New York*, S.D.N.Y. No. 16-cv-6809, 2018 U.S. Dist. LEXIS 241008 (Sept. 29, 2018)...............................................................................................14

*Kinkus v. Village of Yorkville*, 289 F.App'x 86 (6th Cir. 2008).............................................14

*Lin v. District of Columbia*, 47 F.4th 828 (2022).......................................................................5

*Logsdon v. Hains*, 492 F.3d 334 (6th Cir.2007).................................................................18-19

*Michigan v. DeFillippo*, 443 U.S. 31 (1979) ..........................................................................10

*Moldowan v. City of Warren*, 578 F.3d 351 (6th Cir. 2009) ...................................................13

*Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978)............................................................ 2, 15

*Newman v. Twp. of Hamburg*, 773 F.3d 769 (6th Cir. 2014) ..................................................14

*Ouza v. City of Dearborn Hts.*, 969 F.3d 265 (6th Cir. 2020)....................................2, 15, 19

*Preston v. Kelsey*, 6th Dist. No. L-85-352, 1986 Ohio App. LEXIS 6703 (May 9, 1986) .......................................................................................................................11

*Sanders v. Det. Police Dept.*, E.D.Mich. No. 07-14206, 2016 U.S. Dist. LEXIS 2040 (Jan. 7, 2016) ....16

*Santiago v. City of Yonkers*, S.D.N.Y. No. 21 Civ. 764, 2023 U.S. Dist. LEXIS 51961 (Mar. 27, 2023) ....14

*Sheets v. Mullins*, 109 F.Supp.2d 879 (S.D.Ohio 2000) ....17

*State v. Beyers*, 1996 Ohio App. LEXIS 1641 (2nd Dist. Apr. 26, 1996) ....11

*State v. Gipp*, 2024-Ohio-1076 (2nd Dist.) ....17

*State v. Green*, 2020-Ohio-500 (1st Dist.) ....12

*State v. Martin*, 2024-Ohio-2334 (4th Dist.) ....11

*State v. Miller*, 2015-Ohio-644 (4th Dist.) ....11

*State v. O'Neill*, 2015-Ohio-815 (3rd Dist.) ....17

*State v. Pesec*, 2007-Ohio-3846 (11th Dist.) ....10

*State v. Rhodes*, 2 Ohio St.3d 74 (1982) .... 10, 11

*State v. Shoemaker*, 96 Ohio St. 570 (1917) ....12

*State v. Vitale*, 96 Ohio App.3d 695 (8th Dist. 1994) ....12

*Webb v. U.S.*, 789 F.3d 647 (6th Cir. 2015) ....14

*Wesley v. Campbell*, 779 F.3d 421 (6th Cir. 2015) ....5

*White v. Roch*, 2005-Ohio-1127 (9th Dist.) ....17

*Ybarra v. Illinois*, 444 U.S. 85 (1979) ....17

**Statutes**

R.C. 2935.03(B) ....15

## SUMMARY OF ARGUMENT

New facts can negate an initial probable cause finding. A probable cause determination must be based on the totality of the circumstances and also must take account of both the inculpatory and exculpatory evidence within the knowledge of the arresting officer as the investigation proceeds. If an officer discovers information or evidence favorable to the accused in the course of an investigation, that information or evidence must enter into a new totality of the circumstances analysis to determine whether there is probable cause for arrest. An officer's probable cause for arrest may start to erode and eventually evaporate as an investigation continues.

This Court has held that in making a probable cause determination, officers "cannot simply turn a blind eye toward potentially exculpatory evidence." *Ahlers v. Schebil*, 188 F.3d 365, 372 (6th Cir. 1999). In this case, based on new information obtained during the investigation, the arresting officer should have realized that the initial report he had received was not accurate and that, as a result, there was no longer a basis for arrest. Summary judgment should not be available to Defendants-Appellees because, viewing the facts in a light favorable to Redden, a jury looking at the totality of the circumstances in this case – particularly the videos – could conclude that a reasonable officer, after reviewing all the available evidence, would believe probable cause no longer existed the time of the arrest.

A reasonable jury could find Ross Township responsible for Redden's constitutional injuries under a theory of single-incident liability because Ross Township did not maintain a policy or custom of adequate supervision on probable cause determinations for constitutional arrests. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978).

Finally, qualified immunity is not available because this Court's precedent establishes "that an officer must consider both inculpatory and exculpatory evidence when assessing probable cause." *Ouza v. City of Dearborn Hts.*, 969 F.3d 265, 282-83 (6th Cir. 2020), *citing Gardenhire v. Schubert*, 205 F.3d 303, 318 (6th Cir. 2000) (police officers did not have probable cause to arrest where they did not consider known exculpatory evidence).

## ARGUMENT

### A. Viewing The Evidence in the Light most favorable To Redden, Redden Has Sufficient Evidence To Proceed On His 1983 Claim Against Baird

Redden's Fourth Amendment rights were violated in two ways: (i) he was subjected to a warrantless arrest where there was not probable cause to believe that a criminal offense has been or is being committed; and (2) he was subjected to a malicious prosecution based on wrongful investigation, prosecution, conviction, and incarceration.

#### 1. Baird's Probable Cause For Arrest Started To Erode And Eventually Evaporated As He Continued To Investigate And After He Received The Video Of The Incident

This Court, in *Ahlers*, *supra*, held that officers "cannot simply turn a blind eye toward potentially exculpatory evidence." 188 F.3d at 372. This court explained that an officer is entitled to rely on witness statements to establish adequate probable cause with which to sustain an arrest "unless, at the time of the arrest, there is an apparent reason for the officer to believe that the eyewitness was lying, did not accurately describe what he had seen, or was in some fashion mistaken regarding his recollection of the confrontation." *Ahlers*, 188 F.3d at 370. And in *Gardenhire*, *supra,* this Court held that even when an officer initially has probable cause, the totality of the circumstances supporting that decision can change as the officer gathers more facts about the alleged crime. 205 F.3d at 318.

Under the standard this Court announced in *Ahlers* and *Gardenhire*, it is obvious that Baird lacked probable cause. Defendants-Appellees do not address either *Ahlers* or *Gardenhire* in their Brief. These cases establish that a jury should be permitted to decide whether, based on the totality of the evidence *in Baird's possession when he arrested Redden*, there was probable cause to believe he had committed any crime. Specifically, as Baird investigated this matter, it was apparent that the alleged victim had lied in her initial statement to the police.

Defendants, instead of addressing the *Ahlers-Gardenhire* line of cases, place significant emphasis on the initial statement given by the alleged victim, Langen. Appellees Br. at 13-14. Here is where the parties agree: if Baird done nothing after receiving the report from Langen, he likely had probable cause to arrest Redden for all of the crimes described on pages 13-21 of Appellee's Brief.

This agreement ends where Baird decided to conduct further investigation. Under Defendants-Appellees' view of the case, once probable cause is established during an investigation, it exists for all time. In their view, once Baird received a signed statement establishing probable cause, no other evidence could negate that conclusion.[1] Appellees Br. at 10. Hardly. Investigators can, and should, change their minds about what took place, especially as the investigation unfolds and the fact-gathering continues.

---

[1] Baird substantially undermines Defendants-Appellees' argument by admitting that he did not base his decision to arrest Redden solely on Langen's statement. (Baird Depo., R.16, PageID#84-89.)

Responsible officers can change their minds about what happened, whether a crime took place, and whether it is worthwhile to pursue charges. Probable cause is a fluid concept that can change or deteriorate during the course of an investigation. The flaw in Appellees' Brief, and the fundamental error underpinning the District Court's grant of summary judgment is that whatever probable cause was established by the initial statement had dissipated when Baird received the exculpatory video; Baird could not continue to rely on the statement from Langen but was required to re-assess the case before the decision was made to arrest Redden.

A probable cause determination must be based on the "totality of the circumstances," and *also* must take account of "both the inculpatory and exculpatory evidence" within the knowledge of the arresting officer as the investigation proceeds. *Courtright v. City of Battle Creek*, 839 F.3d 513, 521 (6th Cir. 2016), *citing Wesley v. Campbell*, 779 F.3d 421, 429 (6th Cir. 2015). A "corollary of the rule that probable cause requires a 'totality-of-the-circumstances analysis,'… is that 'new facts' can 'negate probable cause.'" *Lin v. District of Columbia*, 47 F.4th 828, 841 (2022) (citations omitted). *See also BeVier v. Hucal*, 806 F.2d 123, 128 (7th Cir. 1986) (affirming verdict for plaintiffs in section 1983 case, and observing that a "police officer may not close her or his eyes to facts that would help clarify the circumstances of an arrest" where later discovered facts dissipate earlier finding of probable cause). Thus, if an officer discovers information or evidence favorable to the accused in the course of an investigation, that information or evidence must enter into a *new* totality of the circumstances analysis to determine

whether there is probable cause for arrest. *Harris v. City of Saginaw*, 62 F.4th 1028, 1034 (6th Cir. 2023).

This principle is illustrated by this Court's recent unpublished decision in *Brown v. City of Wyoming*, 6th Cir. No. 23-1285, 2024 U.S. App. LEXIS 31173 (Dec. 9, 2024). In *Brown*, this Court reversed a grant of summary judgment in favor of one of the officers, noting that a reasonable juror could conclude that based on the totality of the evidence in his possession at the time he made the arrest, he lacked probable cause. In that case, an officer had received a call from a witness which led him to believe that individuals were unlawfully in a home. This Court noted that the officer "likely had probable cause to make an arrest when dispatch first relayed the neighbor's call" and that he had no reason to believe that the witness was lying, did not accurately describe what she had seen, or was in some fashion mistaken. However, this Court noted that the officer's "probable cause for arrest started to erode" and eventually "evaporated" as he continued to investigate. Based on new information obtained during the investigation the officer "either realized or should have realized" that the statement he had received was not accurate and that, as a result, there was "no longer a basis for arrest." 2024 U.S. App. LEXIS 31173, at *11-14

As in *Brown,* in this case, a reasonable jury could conclude that Baird's probable cause for the arrest evaporated once he viewed the video. Defendants-Appellees are incorrect in suggesting that this rule requires Baird to either believe "a former defendant's version of the totality of the circumstances or ignore Langen's written

statement." Appellees Br. at 14. There is a third choice: Baird could have objectively viewed the video and then determined whether the statements he received from the involved parties accurately described the state of affairs.

Viewing the facts in a light favorable to Redden, this Court should reverse the grant of summary judgment because a jury could conclude that a reasonable officer, after reviewing the video, would not have believed Langen's statement Redden had probably committed a crime. A reasonable jury could look at the totality of the circumstances – particularly the videos – and conclude that probable cause did not exist. Baird only ever considered that Redden, and not Langen, was the primary aggressor and refused to consider Redden's allegations against Langen. Defendants-Appellees are not entitled to summary judgment because Baird improperly disregarded facts tending to dissipate probable cause in favor of the theory Baird had developed that Redden was guilty of the crime. This confirmation bias negates probable cause. Baird, both during the investigation and in his deposition, demonstrated an unwillingness to consider, or even recognize, any facts tending to dissipate probable cause throughout the investigation and particularly at the point of Redden's arrest.

Defendants-Appellees offer one interpretation of the video, suggesting that it shows "Langen asking for assistance from the neighbor, Langen attempting to retrieve her phone, Redden calling her a piece of shit, and Langen yelling for someone to call the police." Appellees Br. at 15. *See also* Appellees Br. at 18 fn 1. In contrast, Redden and the Twelfth District Court of Appeals offer a contrasting interpretation, suggesting

that the video shows, *inter alia,* that Langen suffered the injuries observed by Baird "during the parties' scuffle at the sliding glass door when she was trying to force her way inside the house and Redden was trying to keep her out of the house and close the door." *Redden*, 2024-Ohio-1088, ¶ 12. This Court does not need to resolve this conflict; it is enough to say that, construing the evidence in the light most favorable to Redden, a reasonable juror might decide that the three judges on the Twelfth District Court of Appeals are correct and the video in Baird's possession clearly showed: (i) Langen was the primary aggressor; and (ii) Redden came into physical contact with Langen when she tried to push her way inside the house. Construing the evidence in this manner, that same juror could conclude that Baird, as a result, violated his clearly established duty to properly weigh and consider, and not disregard, this exonerating evidence that tended to dissipate probable cause.

### 2. Baird Did Not Have Probable Cause To Arrest Redden For Any Other Crimes

Defendants-Appellees argue that Baird could have lawfully arrested Redden for theft or criminal mischief, under the rule that an arrest is proper so long as there is probable cause to arrest him for some crime, even if the crime for which there is probable cause is different from the stated crime of arrest. Appellees Br. at 23-24, *citing Devenpeck v. Alford*, 543 U.S. 146, 153 (2004) ("[The officer's] subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause."). Defendants-Appellees argue that if the arrest for domestic violence

was objectively unreasonable, then the violation of the theft or criminal mischief can fill the probable cause vacuum, given the facts known to the officer. This argument fails for two reasons.

First, under *Devenpeck*, whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest. 543 U.S. at 152. Accordingly, the hypothetical objective office would still be required to take into account the exculpatory video in making the probable cause determination for these other offenses. *See supra.*

In *Devenpeck*, police officers pulled over a citizen because they believed he had been impersonating a police officer. They eventually improperly arrested him for tape recording their conversation with him during the traffic stop in violation of the Washington Privacy 543 U.S. at 151. The citizen sued for false arrest. The Supreme Court held, that if the officers had probable cause to arrest the citizen for impersonating a police officer, his false arrest claim would be precluded, even if probable cause did not exist for a Privacy Act arrest. 543 U.S. at 151-53. The Court held that it was not necessary that the offense involved (here, the Privacy Act violation) be "closely related" to the crime for which probable cause did exist (impersonating a police officer). 543 U.S. at 153. In reaching this conclusion, the *Devenpeck* Court held that the "[s]ubjective intent of the arresting officer… is simply no basis for invalidating an arrest." 543 U.S. at 154-55. In other words, an officer's "subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause." 543

U.S. at 153. *Devenpeck*, however, does not permit officers to invoke *post hoc* justifications to demonstrate probable cause at the time of arrest. Rather, probable cause "to justify an arrest means facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person . . . in the circumstances shown, [to believe] that the suspect has committed, is committing, or is about to commit an offense." *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979). *See also Anderson v. Creighton,* 483 U.S. 635, 641 (1987) (explaining that the "objective" inquiry for probable cause is based on "the information the searching officers possessed").

Second, Redden could not be charged with theft or criminal mischief for crimes related to his own phone. In Ohio theft cases, the "important question is not whether the person from whom the property was stolen was the actual owner, but rather whether the defendant had any lawful right to possession." *State v. Rhodes*, 2 Ohio St.3d 74, 76 (1982).[2] Here, facts suggesting that Redden did not commit a theft offense by taking Langen's phone were known to Baird. Baird was aware that the phone belonged to Redden and was being kept by Langen; there is a question of fact as to whether Langen's statement provided a reasonable basis for such charges since Baird was aware that Redden had a lawful right to possess the phone. (See Trial Tr., R.21-1, PageID#708 ("He did state that he gave her the phone… and that he allowed her to

[2] Defendants-Appellees reliance on *State v. Pesec*, 2007-Ohio-3846, ¶ 54 (11th Dist.), is misplaced. *Pesec* involved a receiving stolen property charge and the owner of the property testified that he did not give the defendant permission to remove the property.

continue to use the phone so that they could have contact…"); Trial Tr., R.21-1, PageID#709-710 (Redden had told him that "that he had asked for it back…" and acknowledging that Redden had previously asked for that phone back.).

This evidence disposes of Defendant's arguments because Ohio law does not permit persons to be criminally charged with taking or damaging their own property. Ohio courts have found a lack of probable cause where someone is charged with stealing their own property.[3] In *Preston v. Kelsey*, 6th Dist. No. L-85-352, 1986 Ohio App. LEXIS 6703, * 5 (May 9, 1986), the court held (in a malicious prosecution case) that a defendant lacked probable cause to institute an action for theft where the charged party had a claim of title over a vehicle. In *State v. Howell*, 64 Ohio Misc 2d 23, 29 (Hamilton County C.P. 1994), an Ohio state trial court judge determined that probable cause did not exist to bind a case to the grand jury on a charge of unauthorized use of a motor vehicle where the defendant "still held an interest in the vehicle." The Ohio case law cited by Defendants-Appellees stands for the related, but distinct, proposition that for a theft offense to occur, it is merely necessary to prove that a defendant deprived someone of property who had "possession or control of, or any license or any interest in" that property.[4] *Rhodes*, 2 Ohio St.3d at 76. The law in Ohio has long been

---

[3] This is why, for example, the repossession of a vehicle is not a theft.

[4] Defendants-Appellees rely on *State v. Martin*, 2024-Ohio-2334, ¶ 56 (4th Dist.), and *State v. Miller*, 2015-Ohio-644, ¶ 30 (4th Dist.). These cases merely hold that the important question in a theft case is not whether the person from whom the property is stolen was the actual owner, but whether the defendant had any lawful right to

that, for theft-oriented offenses, "[t]he gist… [i]s not the particular ownership of the property, but the 'wrongful' taking." *State v. Shoemaker*, 96 Ohio St. 570, 572 (1917). *Cf. State v. Vitale*, 96 Ohio App.3d 695 (8th Dist. 1994) (a defendant who took his car from a repair shop after a dispute over the adequacy of performed repairs had not committed theft). One court has observed that "Ohio caselaw underscores that the controlling relationship in theft cases is that of the *defendant* to the property in question." *State v. Green*, 2020-Ohio-500, ¶ 8 (1st Dist.) (emphasis supplied). *See also City of Dayton v. Crane*, 2d Dist. No. 16608, 1998 Ohio App. LEXIS 153, at *9 (Jan. 23, 1998) ("What was important was whether [the defendant] had any lawful right to possession.").

### 3. Redden's Malicious Prosecution Claim Survives

Defendants-Appellees suggest that the malicious prosecution claim fails because "the prosecutor determined to file charges and the prosecutor decided to go to trial." Appellees Br. at 30. Defendants-Appellees cite no evidence in the record that this occurred; there is no evidence in the record that Baird discussed this case with a prosecutor or that the case was ever actually reviewed by a prosecutor. The Complaint was signed by Baird, not a prosecutor. (Criminal Complaint, Doc.16-7, PageID#217.)

---

possession. In other words, these cases simply state the old maxim that 'a thief can steal from a thief' and serve to relieve the prosecution of the often difficult burden of proving actual, titled ownership of stolen property. This is not the situation presented here, as these cases do not address situations where a *defendant* had lawful ownership. *Compare State v. Beyers*, 1996 Ohio App. LEXIS 1641, at *8 (2nd Dist. Apr. 26, 1996) (noting that a defendant would have a defense to a theft charge if "intending to steal his neighbor's television set, absconds with it only to discover that it is, in fact, his own television set that the neighbor had earlier borrowed from the defendant's wife.").

Baird testified:

> Q. So you caused the charges to be filed against Mr. Redden?
> A At the complaint of the victim.
> Q Okay. Well, it's your determination; right? It's your signature there at the bottom; right?
> A Yes. Given the facts that were presented to me, yes.
> Q And you booked him into the Butler County Jail?
> A That is correct.

(Baird Depo., Doc.16, PageID#132.)[5] Regardless, the role of prosecutors considering whether they could secure a conviction under the standard of 'beyond a reasonable doubt' is different from the role of a police officer determining probable cause and it is undisputed that the prosecutor was not involved in the investigation or arrest decision.

Even if Defendant's unsupported assertion that the prosecutor conducted an independent evaluation could find support in the record, Baird cannot absolve himself of his failure to base his arrest decision on the totality of the evidence through a later independent probable cause determination of a prosecutor. *See Awabdy v. City of Adelanto*, 368 F.3d 1062, 1067 (9th Cir. 2004) (holding that the "presumption of prosecutorial independence does not bar a subsequent § 1983 claim against state or local officials who improperly exerted pressure on the prosecutor, knowingly provided misinformation to him, concealed exculpatory evidence, or otherwise engaged in

---

[5] Redden is *not* arguing that the reversal by the Twelfth District is determinative of the issue of whether Baird had probable cause. That said, the Twelfth District's decision is very persuasive on this issue, as three judges of that court reviewed the same evidence in the possession of Baird – the videos – and found that they were highly exculpatory.

wrongful or bad faith conduct that was actively instrumental in causing the initiation of legal proceedings"); *cf. Moldowan v. City of Warren*, 578 F.3d 351, 379 (6th Cir. 2009) ("Although the prosecutor undoubtedly plays a 'special role' in 'the search for truth in criminal trials,' . . . the police also play a unique and significant role in that process, and thus also are bound by the government's constitutional obligation to 'ensure that a miscarriage of justice does not occur."); *See Newman v. Twp. of Hamburg*, 773 F.3d 769, 771 (6th Cir. 2014) (claim that officer's affidavit for a warrant purposefully distorted evidence). Indeed, to make out a malicious prosecution claim, an officer need not have made the final decision to prosecute; all that is required is that an officer must have "participated" in the decision. *Webb v. U.S.*, 789 F.3d 647, 659 (6th Cir. 2015).

Defendants-Appellees also suggest that Redden's § 1983 malicious prosecution claim fails because Baird did not participate in a decision to prosecute. Appellees Br. at 30-31, *citing Kinkus v. Village of Yorkville*, 289 F.App'x 86 (6th Cir. 2008) (officer "had no role in choosing to prosecute" plaintiff). The cases relied upon by Defendants-Appellees are inapposite because they refer to situations where prosecutors rely on police officer statements to initiate charges.[6] In *Kinkus*, for example, the officer's

[6] Other courts have explained that to satisfy the first element of a malicious prosecution claim against a police officer, the "plaintiff must show that the officer brought formal charges and had the person arraigned, or filled out complaining and corroborating affidavits or swore to and signed a felony complaint"; or "[a]lternatively, an officer initiates a prosecution by creating material, false information and forwarding that information to a prosecutor or by withholding material information from a prosecutor. *Santiago v. City of Yonkers*, S.D.N.Y. No. 21 Civ. 764, 2023 U.S. Dist. LEXIS 51961, at

actions "consisted only of completing a police report, signing a blank criminal complaint form that did not recommend any particular charge, and soliciting a written report from a witness." 289 F.App'x at 91. In contrast, as noted *supra*, in this case Baird arrested Redden and signed the criminal complaint without any consultation with a prosecutor and there is no evidence in the record that Baird actually consulted with the prosecutor.[7]

### B. Redden Presented Sufficient Evidence To Proceed On His Failure To Supervise Claim

Ross Township seeks to shield itself from liability "under § 1983 for an injury inflicted solely by its employees or agents." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). As noted in Appellant's Brief, this Court has held that a plaintiff can rely on a single incident to establish liability. *Ouza v. City of Dearborn Hts.*, 969 F.3d 265, 287 (6th Cir. 2020).

Ross Township relies heavily on the suggestion that, as a result of the Ohio preferred arrest statute, the written statement from Langen, by itself, provided probable cause for an arrest. Appellees Br. at 35-36, *citing* R.C. 2935.03(B). Ross Township argues an extreme position – suggesting that Redden must show that "the Township

---

*22 (Mar. 27, 2023), *quoting Israel v. City of New York,* S.D.N.Y. No. 16-cv-6809, 2018 U.S. Dist. LEXIS 241008 at *6 (Sept. 29, 2018).

[7] Defendants-Appellees appear to suggest that Redden's claims are barred by collateral estoppel. Appellees Br. at 30. The issue of collateral estoppel was waived because it was never raised in the Answer or Motion for Summary Judgement. (Answer, Doc.4, PageID#14; Motion for Summary Judgment, Doc.19, PageID#538.)

should, in fact, caution officers not" to follow this state law. Appellees Br. at 35. This overstates the situation. The reliance of Ohio's preferred arrest statute is misplaced because, in the § 1983 context, the inquiry into whether the Plaintiff's Fourth Amendment rights were violated cannot stop at the question of whether officers follow state law. The fact that the Ohio Revised Code provides for an arrest based solely on a written statement is irrelevant. Courts in this Circuit have held that because "actions under § 1983 concern violations of federal rights, an officer's compliance with a state statute does not defeat a § 1983 action." *Denton v. Rievley*, E.D.Tenn. No. 1:07-CV-211, 2008 U.S. Dist. LEXIS 60280, at *4-5 (July 21, 2008), *aff'd*, 353 F. App'x 1 (6th Cir. 2009).[8] In *Denton*, for example, a police officer argued that his actions in arresting a person for domestic violence was proper under a Tennessee law allowing police officers to make arrests for misdemeanor domestic abuse cases without a warrant. The court said that "Defendant's contention is irrelevant to the constitutional question at issue here. If an action is prohibited by the Fourth Amendment, a state law cannot permit it." *Id.* Similarly, in *Sanders v. Det. Police Dept.*, E.D.Mich. No. 07-14206, 2016 U.S. Dist. LEXIS 2040, at *8-9 (Jan. 7, 2016), a court held that reliance on a similar Michigan law which provides that law enforcement agencies should create written policies for

[8] This Court, in affirming the *Denton* decision, addressed this issue in the qualified immunity context, noting that other circuits have held that while reliance on a statute is a factor to consider in determining whether or not an officer's actions were objectively reasonable, reliance on a statute does not make an official's conduct *per se* reasonable. 353 F.App'x at 6-7.

responding to domestic violence situations that recommend making an arrest if the police officer has probable cause to believe an individual committed a domestic assault "does not shield Defendants-Appellees from complying with the Fourth Amendment." *Cf. Cooper v. California*, 386 U.S. 58, 61 (1967) ("The question here is not whether the search was authorized by state law. The question is rather whether the search was reasonable under the Fourth Amendment."); *Ybarra v. Illinois*, 444 U.S. 85, 96 n.11 (1979) (legislature cannot abrogate a person's Fourth Amendment right to be free from unreasonable searches and seizures); *Anaya v. Crossroads Managed Care Sys.,* 195 F.3d 584, 591 fn.2 (10th Cir. 1999) (noting that even when the Fourth Amendment standard is reflected in a state statute, "a state statute does not and cannot define the scope of constitutional rights").[9]

In this case, as in *Ouza*, *supra*, there is a question of a fact about whether Ross Township does in fact evaluate, review, or monitor the conduct of its officers. Ross

---

[9] The cases cited by Defendants-Appellees on Page 19 of their Brief are inapposite because none involved situations where the officers ignored exculpatory evidence and/or had admissions from the accused. *State v. Gipp*, 2024-Ohio-1076, ¶ 29 (2nd Dist.) (defendant admitted to a confrontation and court acknowledged that an arrest for domestic violence under the statute "without probable cause is constitutionally invalid"); *State v. O'Neill*, 2015-Ohio-815, ¶ 34 (3rd Dist.) ("observations at the scene which corroborated" alleged victim's statements); *White v. Roch*, 2005-Ohio-1127, ¶ 16 (9th Dist.) (no mention of evidence besides written accusation); *Sheets v. Mullins*, 109 F.Supp.2d 879, 889 (S.D.Ohio 2000), *rev'd*, 287 F.3d 581 (6th Cir. 2002), does not involve a false arrest claim, but whether a failure to respond in a timely fashion, to arrest upon obvious probable cause, and to prosecute a criminal wrongdoer does can result in liability under § 1983.

Township responds to the testimony from Baird that he had "no idea" if his report was actually reviewed by a supervisor with the claim that Baird's report was "reviewed and approved" by the Chief of Police. Appellees Br. at 36. This claim is based on testimony by a supervisor and a notation on the report. (Rogers Depo., Doc.17, PageID#248; Report, Doc.16-5, PageID#204.) However, Ross Township presents no evidence that the Chief actually read the report or did any supervisory work. Baird testified that he had "no idea" what was done to review the report, adding "That's on them to do." (Baird Depo., Doc16, PageID#137-138.) Rogers testified that if he had been supervising the matter, he would have asked question about whether the "the videos show this?" and "Do the videos give you the information who the primary aggressor is?" (Rogers Depo., Doc.17, PageID#250.)

### C. Officer Baird Is Not Entitled To Qualified Immunity

Considering both inculpatory and exculpatory facts in the light most favorable to the plaintiff, Redden's arrest was not supported by probable cause. *See supra.* Moreover, a reasonable jury could find that no reasonable officer with knowledge of these facts would believe that the arrest was supported by probable cause. *See supra.*

Baird had 'fair warning' that his conduct would be unlawful and a reasonable officer in his situation would know that his conduct was unlawful in the situation he confronted. This Court's decisions in *Ahlers*, *supra*, and *Gardenhire, supra*, clearly establish that probable cause is not set in stone, but must constantly be reconsidered based on the totality of the circumstances as the officer gathers more facts about the alleged

crime. These cases also clearly establish that officers may not make a warrantless arrest when additional evidence obtained in the investigation establishes that a witness was lying, did not accurately describe what he had seen, or was in some fashion mistaken regarding her recollection of the confrontation. Appellant previously directed this Court to *Logsdon v. Hains*, 492 F.3d 334 (6th Cir. 2007). Defendants-Appellees make no effort to distinguish this decision. In *Logsdon*, this held that qualified immunity was no available because, under *Gardenhire*, the law is "clearly established that, absent probable cause to believe that an offense had been committed, was being committed, or was about to be committed, officers may not arrest an individual." This Court in *Logsdon* applied that rule to a comparable situation, finding that officers were not entitled to qualified immunity when, in the course of assessing whether probable cause existed, they turned a blind eye to potentially exculpatory evidence and "deliberately excluded from a totality of known facts and circumstances information that might bear on the accuracy, reliability, or trustworthiness of the" initial report of criminal conduct. 492 F.3d at 342. In *Logsdon*, *supra*, this Court held that, since at least *Gardenhire,* "our Circuit's precedent… does require that warrantless arrest follow consideration of the totality of the circumstances reasonably known to the arresting officers" and that "officers initially assessing probable cause to arrest may not off-handedly disregard potentially

exculpatory information made readily available by witnesses on the scene."[10] 492 F.3d at 342-343.

## CONCLUSION

The Order Granting Summary Judgment should be reversed and this matter should be remanded to the District Court for a trial.

[10] In *Ouza*, this Court said that officers had "fair warning" from "our precedent establishing that an officer must consider both inculpatory and exculpatory evidence when assessing probable cause." 969 F.3d at 282. Defendants-Appellees seek to distinguish this precedent by suggesting that "exculpatory evidence, to the extent it existed (it did not), is only part of the 'totality of the circumstances'" and that the and that the video is "only part of the totality of the circumstances" Appellees Br. at 13-14 (emphasis omitted), *quoting Ouza*, 969 F.3d at 289. This misreads *Ouza* by failing to consider the necessity of taking the exculpatory evidence into account there by permitting officers to pick and choose which evidence to consider. In *Ouza* this court emphasized that an "officer must consider the totality of the circumstances, recognizing both the inculpatory *and* exculpatory evidence, before determining if he has probable cause to make an arrest." 969 F.3d at 283 (emphasis in original).

Respectfully submitted,

/s/ Joshua Adam Engel

Joshua Adam Engel (0075769)
ENGEL AND MARTIN, LLC
4660 Duke Drive, Suite 101
Mason, OH 45040
(513) 445-9600
(513) 492-8989 (Fax)
engel@engelandmartin.com

**CERTIFICATE OF COMPLIANCE**

Pursuant to Fed. R. App. P. 32(g) and 6 Cir R. 32(a) I hereby certify that this document complies with the type-volume limitation. This document contains 5310 words, excluding the portions listed in 6 Cir. R. 32(b), as calculated by Microsoft Word.

/s/ Joshua Adam Engel
Joshua Adam Engel (0075769)

**CERTIFICATE OF SERVICE**

I hereby certify that on October 12, 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to counsel for all parties.

/s/ Joshua Adam Engel
Joshua Adam Engel (0075769)